IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

FREDERICK LAMONT HAZEL,
    Petitioner,

v.                                                     Civil No. 3:21cv706 (DJN)

HAROLD W. CLARKE,[1]
    Respondent.

## MEMORANDUM OPINION

Frederick Lamont Hazel, a Virginia state prisoner proceeding *pro se*, brings this petition pursuant to 28 U.S.C. § 2254, ("§ 2254 Petition," ECF No. 1),[2] challenging his convictions in the Circuit Court for the County of Arlington, Virginia, ("Circuit Court"). By Memorandum Opinion and Order entered on June 8, 2022, the Court granted in part and denied in part Respondent's Motion to Dismiss, dismissed Claim Two (b) and ordered Respondent to file a supplemental brief. (ECF Nos. 13, 14.) The matter is now before the Court on Respondent's Supplemental Brief in Support of the Rule 5 Answer and Motion to Dismiss. (ECF No. 15.) Hazel has responded, (ECF No. 18), and the matter stands ripe for review.

For the reasons stated below, Claim One will be DISMISSED, because it is procedurally defaulted and barred from review, Claim Two (a) will be DISMISSED, because it lacks merit, and the § 2254 Petition will be DENIED.

---

[1]     By Memorandum Opinion entered on June 8, 2022, the Court directed the Clerk to substitute Respondent Harold W. Clarke for I.T. Gilmore and update the docket accordingly. (ECF No. 13, at n.1.)

[2]     The Court employs the pagination assigned to the parties' submissions by the CM/ECF docketing system. The Court corrects the spacing, capitalization, punctuation, and spelling in the quotations from the parties' submissions.

## I. PROCEDURAL HISTORY

On January 31, 2018, the day that his jury trial was scheduled, Hazel pled guilty to one count of possession with intent to distribute cocaine, a Schedule II controlled substance, third offense. (*See* ECF No. 5-1, at 1 (Sentencing Order); ECF No. 20-3, at 8–9 (Plea Hearing Transcript).) On April 27, 2018, the Circuit Court entered an order sentencing Hazel to fifteen years of incarceration. (ECF No. 5-1, at 1–3.) Hazel filed no appeal.

On May 24, 2019, Hazel filed a petition for a writ of habeas corpus in the Circuit Court. Petition for Writ of Habeas Corpus at 1, *Hazel v. Clarke*, No. CL19–1657 (Va. Cir. Ct. filed May 24, 2019). In his state habeas petition, Hazel raised the following claims for relief:

> [I] Hazel was denied due process by the state's failure to disclose [that] a witness, Carter, was a paid police informant and failure to disclose surveillance recordings from the disputed traffic stop ("the *Brady* Claim").
>
> [II] Hazel was denied effective assistance of counsel by the failure of trial counsel to investigate defense and evidence, failure to subpoena a witness, Janell, and failure to preserve an appeal by misadvising Hazel to enter an unconditional guilty plea ("the IAC Claim").
>
> [III] Hazel was denied due process by the trial court accepting his unconditional guilty plea which was not knowing or voluntary because the ruling on the suppression issue was disputed and Hazel wished to preserve his ability to appeal by entering a conditional guilty plea ("the Due Process Claim").

*Id.* at 3–4. On June 18, 2020, the Circuit Court dismissed the petition, concluding that Claims I and III were barred pursuant to the rule in *Slayton v. Parrigan*, 205 S.E.2d 680, 682 (Va. 1974), because Hazel could have raised, but failed to raise, the claims on direct appeal. The Court further found that Hazel's validly entered plea also barred Claims I and III and that all of Hazel's claims lacked merit. (ECF No. 5-2, at 5–28.)

Hazel appealed to the Supreme Court of Virginia. In his petition for appeal, Hazel raised the following assignments of error:

1. Petitioner was denied due process by the Commonwealth's failure to properly disclose, as it was obligated to do under *Brady v. Maryland*, 373 U.S. 83 (1963), [that] an eyewitness was its paid confidential informant and the tipster who caused his vehicle to be pretextually stopped . . . .

2. Petitioner was denied effective assistance of trial counsel by his attorney's failure to preserve a suppression issue for review on direct appeal, erroneous advice about the availability of a conditional plea, failure to advocate, and failure to discover and investigate defense evidence . . . .

3. Petitioner was denied due process by the sentencing court's acceptance of an unconditional guilty plea which it knew or should have known was not knowing or intelligent because a "tenuous" pretrial ruling was disputed and a major reason for the plea . . . .

Petition for Appeal from the Circuit Court of Arlington County at iv.–v., *Hazel v. Gilmore*, No. 201137 (Va. filed Sept. 16, 2020). On June 1, 2021, the Supreme Court of Virginia refused the petition for appeal. (ECF No. 5-3, at 1.) On October 8, 2021, the Supreme Court of Virginia denied Hazel's petition for rehearing. (ECF No. 1-3, at 3.) Thereafter, on November 10, 2021, Hazel filed his § 2254 Petition in this Court.

In his § 2254 Petition, Hazel argues that the following grounds entitle him to relief:

Claim One: [Hazel] was denied his right to due process of law, and consequently, a fair trial, as guaranteed to him by the Fifth and Fourteenth Amendments to the United States Constitution, and as set forth by the United States Supreme Court in *Brady v. Maryland*, 373 U.S, 83 (1963), when the Commonwealth failed to disclose the actual basis for the vehicle stop which led to petitioner's arrest was not a traffic infraction, but was rather, an undisclosed tip from the Commonwealth's paid confidential informant. (ECF No. 1-1, at 2.)

Claim Two: [Hazel] was denied his right to effective assistance of counsel . . . when trial counsel: (a) failed to investigate, discover, and/or advocate that the basis for the vehicle stop which led to [Hazel's] arrest was not a traffic infraction, but was, rather, an undisclosed tip from the Commonwealth's paid confidential informant; and (b) provided erroneous advice about the availability of a conditional

3

plea remedy and/or failed to preserve the appellate rights of [Hazel].
(*Id.* at 5.)

Respondent moved to dismiss, *inter alia*, on the grounds that Hazel's claims were either procedurally defaulted and barred from review here, or, alternatively, that each lacked merit. (ECF No. 5, at 5, 11.) Because Respondent failed to adequately address whether cause and prejudice existed to excuse Hazel's default of Claims One and Two (a), the Court granted in part and denied in part the Motion to Dismiss. The Court dismissed Claim Two (b), however. The Court then ordered Respondent to file a further response that addressed *Martinez v. Ryan*, 566 U.S. 1 (2012) and the merits of Claims One and Two (a). Respondent has complied with that directive.[3] As discussed below, Claim One will be dismissed because it is procedurally defaulted and barred from review, and Claim Two (a) will be dismissed because it lacks merit.

## II. EXHAUSTION AND PROCEDURAL DEFAULT

### A. Applicable Law

Before a state prisoner can bring a § 2254 petition in federal district court, the prisoner must first have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). State exhaustion "is rooted in considerations of federal-state comity," and in Congressional determination via federal habeas laws "that exhaustion of adequate state remedies will 'best serve the policies of federalism.'" *Slavek v. Hinkle*, 359 F. Supp. 2d 473, 479 (E.D. Va. 2005) (some internal quotation marks omitted) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 491–92, 492 & n. 10 (1973)). The purpose of exhaustion is "to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v.*

---

[3] By Memorandum Order entered on December 8, 2022, the Court directed Respondent to file an amended answer that comported with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. (ECF No. 19.) Respondent has complied with that directive and filed an amended answer. (ECF No. 20.)

4

*Connor*, 404 U.S. 270, 275 (1971) (internal quotation marks omitted). Exhaustion has two aspects. First, a petitioner must utilize all available state remedies before the petitioner can apply for federal habeas relief. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844–48 (1999). As to whether a petitioner has used all available state remedies, the statute notes that a habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

The second aspect of exhaustion requires a petitioner to have offered the state courts an adequate "opportunity" to address the constitutional claims advanced on federal habeas. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (internal quotation marks omitted) (quoting *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995)). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Id.* Fair presentation demands that a petitioner present "both the operative facts and the controlling legal principles" to the state court. *Longworth v. Ozmint*, 377 F.3d 437, 448 (4th Cir. 2004) (internal quotation marks omitted) (quoting *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000)). The burden of proving that a claim has been exhausted in accordance with a "state's chosen procedural scheme" lies with the petitioner. *Mallory v. Smith*, 27 F.3d 991, 994–95 (4th Cir. 1994).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). This doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Id.*

(citing *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991)). A federal habeas petitioner also procedurally defaults claims when he or she "fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Id.* (quoting *Coleman*, 501 U.S. at 735 n.1).[4] The state bears the burden of pleading and proving that a petitioner has procedurally defaulted a claim. *Jones v. Sussex I State Prison*, 591 F.3d 707, 716 (4th Cir. 2010) (citations omitted). Absent a showing of "cause for the default and actual prejudice as a result of the alleged violation of federal law," or a showing that "failure to consider the claims will result in a fundamental miscarriage of justice," this Court cannot review the merits of a defaulted claim. *Coleman*, 501 U.S. at 750; *see Harris v. Reed*, 489 U.S. 255, 262 (1989) ("Under *Sykes* and its progeny, an adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show 'cause' for the default and 'prejudice attributable thereto.'").

In Virginia, to exhaust state remedies, a "petitioner must present the same factual and legal claims raised in the instant petition to the Supreme Court of Virginia either by way of (i) a direct appeal, (ii) a state habeas corpus petition, or (iii) an appeal from a circuit court's denial of a state habeas petition." *Sparrow v. Dir., Dep't of Corr.*, 439 F. Supp. 2d 584, 587 (E.D. Va. 2006); *see also* Va. Code Ann. § 8.01-654(A)(1) (West 2022).

B.  **Respondent's Arguments for Exhaustion**

Respondent argues that, if Hazel attempted to raise Claim One and Claim Two (a) in a state habeas petition, the petition would be barred as successive pursuant to Va. Code Ann.

---

[4]     Under these circumstances, even though the claim has not been fairly presented to the Supreme Court of Virginia, the exhaustion requirement is "technically met." *Hedrick v. True*, 443 F.3d 342, 364 (4th Cir. 2006) (citing *Gray v. Netherland*, 518 U.S. 152, 161–62 (1996)).

6

§ 8.01–654(B)(2). Likewise, Respondent asserts that the rule in *Slayton v. Parrigan*, 205 S.E.2d 680, 682 (Va. 1974) would also bar such claims, because Hazel could have raised, but failed to raise, these claims on direct appeal. In sum, Respondent contends that both claims are defaulted and barred from review here. As explained in the June 8, 2022 Memorandum Opinion, from the Court's review of the state court record, the Court was not entirely clear whether Claim One was the same or similar to the claim that Hazel raised before the Supreme Court of Virginia. However, the Court found that Claim Two (a) clearly appeared to be an expanded or different claim.

Both Va. Code Ann. § 8.01–654(B)(2) and *Slayton* constitute adequate and independent state procedural rules. *See Clagett v. Angelone*, 209 F.3d 370, 379 (4th Cir. 2000) (citing Va. Code Ann. § 8.01-654(B)(2) for the proposition that "claims not raised in an initial state habeas petition cannot generally be raised in subsequent state habeas petitions"); *Mu'Min v. Pruett*, 125 F.3d 192, 196–97 (4th Cir. 1997) ("We have held on numerous occasions that the procedural default rule set forth in *Slayton* constitutes an adequate and independent state law ground for decision."). Thus, Claim One and Claim Two (a) are defaulted unless Hazel demonstrates cause and prejudice to excuse his default or a fundamental miscarriage of justice. Although Hazel failed to present any arguments to excuse his default, clearly, in Claim Two (a), Hazel faults counsel for failing to raise Claim One prior to his guilty plea. And, although it is unclear whether Hazel raised the entire substance of Claim One through an ineffective assistance of counsel claim in his habeas petition in the state court, in light of *Martinez v. Ryan*, 566 U.S. 1 (2012) and *Trevino v. Thaler*, 569 U.S. 413 (2013), the fact that Hazel had no counsel to assist him with an "initial-review collateral proceeding" may establish cause for the procedural default of this claim. *Martinez*, 566 U.S. at 16. However, as discussed below, because Hazel's

7

underlying ineffective assistance claim (Claim Two (a)) lacks merit, Hazel's lack of counsel fails to serve as cause for the default of Claim One. Therefore, Claim One is barred from review here.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

#### A. Applicable Law

To demonstrate ineffective assistance of counsel, a convicted defendant must show, first, that counsel's representation was deficient, and second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, the Court need not determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

In the context of a guilty plea, the Supreme Court modified the second prong of *Strickland* to require a showing that "there is a reasonable probability that, but for counsel's errors, [petitioner] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). An assertion by Petitioner that he would not have pled guilty if he had received better assistance from counsel does not dispose of the issue, however. *See United States v. Mora-Gomez*, 875 F. Supp. 1208, 1214 (E.D. Va. 1995) (considering "[a]ll facts and circumstances surrounding petitioner's plea," because his assertion that he would have pled not guilty "is not necessarily conclusive."). Rather, "[t]his is an objective inquiry and

8

[highly] dependent on the likely outcome of a trial had the defendant not pleaded guilty." *Meyer v. Branker*, 506 F.3d 358, 369 (4th Cir. 2007) (internal citation omitted) (citing *Hill*, 474 U.S. at 59–60). The Court looks to all the facts and circumstances surrounding a petitioner's plea, including the likelihood of conviction and any potential sentencing benefit to pleading guilty. *See id.* at 369–70. In conducting the foregoing inquiry, the representations of the defendant, his lawyer and the prosecutor during the plea proceedings, "as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977). Thus, "[a]bsent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." *Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1299 (4th Cir. 1992) (citations omitted).

### B. Claim Two (a)

In Claim Two (a), Hazel contends that he "was denied his right to effective assistance of counsel . . . when trial counsel: (a) failed to investigate, discover, and/or advocate that the basis for the vehicle stop which led to [Hazel's] arrest was not a traffic infraction, but was, rather, an undisclosed tip from the Commonwealth's paid confidential informant." (ECF No. 1-1, at 5.) Hazel argues that an individual named Carter, who the police were surveilling before they encountered Hazel, was serving as a paid confidential informant and, essentially, set Hazel up. Hazel states that:

> Months later, in prison, [he] learned from prisoners and defense lawyers that Carter was a paid confidential informant who had worked with police in Southern Maryland, the City of Alexandria, and in Arlington County. Hazel believes the [Arlington County Police Department ("ACPD")] tactical officers were doing a buy-sell narcotics sting operation at the C.V.S. store using Carter as their seller and confidential informant and that Carter tipped the ACPD tactical units, who were watching remotely, that he had just sold cocaine to Hazel. He maintains the Commonwealth suppressed disclosure of Carter's status as a paid confidential

9

> informant and role in his case as a tipster for the vehicle stop, in order to protect Carter . . . .

(*Id.* at 4.) Hazel further contends that counsel

> knew at the time of the suppression hearing and at sentencing that the vehicle stop was pretextual, unconstitutional, ACPD officers were lying to the suppression court, and [that Hazel's] chances of prevailing in the suppression effort would go up if he could demonstrate the ACPD officers were being less than candid in a close, tenuous, suppression issue. Attorney Dennis knew Carter was a suspected drug dealer being surveilled by the ACPD, that he was an eyewitness, that Carter had had contact with Hazel, [that] the vehicle stop was pretextual, and [that] ACPD officers were lying about the basis for their stop.

(*Id.* at 6–7.) Thus, Hazel faults counsel for "fail[ing] to investigate, discover or advocate for [him]." (*Id.* at 7.)

As a preliminary matter, Hazel's claim is predicated on unsubstantiated speculation and conjecture. At most, Hazel's states in his § 2254 Petition that he heard that Carter had served as a paid police informant at some unidentified period in the past through unidentified "prisoners and defense lawyers." (ECF No. 1-1, at 5.) First, even assuming that Hazel heard from others that Carter had served as a paid police informant, this information amounts to nothing more than gossip. Second, the remainder of Hazel's theory is even more tenuous and speculative. Hazel contends that because Carter had allegedly served as a police informant in the past, Carter must have been serving as an informant on the day of Hazel's arrest. Therefore, Hazel urges that, the real reason Hazel's vehicle was stopped was because Carter, in his capacity as a paid informant, reported to police that he sold cocaine to Hazel. But Hazel has not proffered any facts that would support this theory, and the Court cannot draw these inferences based on Hazel's unsubstantiated arguments or the record before it.

Nor can counsel be faulted for failing to investigate Hazel's theory about Carter or make these arguments during the suppression hearing. From Hazel's own statements, it is evident that Hazel learned "months later," (*id.*), that Carter had served as a confidential informant for police

10

at some unidentified period in the past. Hazel fails to allege facts indicating that he was aware of this fact at the time of his criminal proceedings and told counsel, or that there is any conceivable reason why counsel knew or should have known that Carter had potentially served as a confidential informant in the past.

> To the contrary, counsel averred that,
>
> Mr. Hazel was stopped for a pretextual reason, albeit legitimate as determined by the Court after a suppression motion.
>
> The discovery provided and the evidence showed that Officers were surveilling a known drug dealer (believed to be Mr. Carter) on North Glebe Road in Arlington Virginia.
>
> Mr. Hazel drove into a CVS parking lot at the corner of Pershing Drive and North Glebe Road.
>
> Mr. Carter was seen entering the vehicle and exiting shortly thereafter.
>
> The radio transcripts of the conversations of the Officers, provided in discovery, showed that they believed the occupant of the unknown vehicle (subsequently learned to be Mr. Hazel) had engaged in a drug transaction with Mr. Carter.
>
> The radio transcripts further show a contemporaneous declaration that the vehicle, upon exiting the CVS parking lot, drove for a period of time (approximately 7 second), without the taillights engaged. It was after sunset and dark outside, except for street lights.
>
> Mr. Hazel was subsequently stopped for driving without lights (approximately ½ mile later), although the vehicle lights were engaged by that point, and asked to step out of the car. Mr. Hazel complied. The Officers testified that he was nervous and when patted for a weapon, he became verbally combative and attempted to physically shy away. A bulge was felt which upon removal, was found to be a bag containing suspected narcotics. Mr. Hazel was placed under arrest at that time.
>
> Mr. Hazel was subsequently mirandized and interviewed wherein he made inculpatory statements about delivering drugs to a person in Woodbridge.
>
> Counsel was, and still is, unaware that Mr. Carter was acting as a paid informant for the Police at the time of the incident. To the contrary, Counsel believes that Mr. Carter successfully fled and was later arrested for felony eluding (however, no drug charges were filed against him as he was not caught with any drugs in his escape).

11

(ECF No. 15-1, at 1–2 (paragraph numbers omitted).) Thus, the Court finds more plausible the theory that Carter, a known drug dealer, was being watched by police and that Hazel, by happenstance, bought drugs from Carter while the former remaied under police observation. Hazel fails to demonstrate that counsel rendered ineffective assistance for not discovering or advancing a defense theory that was not suggested by anything in the contemporaneous record. Because counsel was not deficient, Claim Two (a) lacks merit for this reason alone.

But Hazel also fails to demonstrate any prejudice under *Strickland*. To establish prejudice, Hazel must show that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. Hazel cannot demonstrate that a reasonable defendant in his position would have insisted on going to trial, but for any alleged error of counsel. As explained previously in conjunction with Claim Two (b):

> Petitioner entered his guilty plea on the day that his jury trial was scheduled. (*See* Jan. 31, 2018 Tr. 8.) Therefore, Petitioner knew the evidence against him, and even heard the Commonwealth's summary of the evidence, and at that point, made an informed and calculated decision to forgo a trial where the likelihood of conviction constituted a near certainty, and instead plead guilty. (*See* Jan. 31, 2018 Tr. 8.) With respect to sentencing exposure, the statutory mandatory minimum for Petitioner's offense was ten years with a maximum sentence of life. (Jan. 31, 2018 Tr. 18.) Petitioner had an extensive criminal history and this offense marked his "seventh felony sentencing event." Presentence Investigation Report at 9, *Hazel*, CR17–1185 (Va. Cir. Ct. filed Apr. 4, 2018). If Petitioner had proceeded to trial, a jury would have heard about his prior record and Petitioner clearly risked receiving a greater sentence than fifteen years. Therefore, Petitioner fails to demonstrate that, but for any alleged error of counsel, he would have insisted on going to trial.

(ECF No. 13, at 15.)

In sum, Hazel fails to demonstrate any deficiency of counsel or resulting prejudice. Accordingly, Claim Two (a) lacks merit and will be DISMISSED. Because counsel was not

deficient, any alleged error of counsel also fails to serve as the cause for the default of Claim One. Accordingly, Claim One is defaulted and barred from review here.[5]

## V. CONCLUSION

For the foregoing reasons, Claim One and Claim Two (a) will be DISMISSED. The action will be DISMISSED. A certificate of appealability will be DENIED.

An appropriate Final Order shall issue.

Let the Clerk file a copy of the Memorandum Opinion electronically and send a copy to Hazel and counsel of record.

/s/
David J. Novak
United States District Judge

Richmond, Virginia
Dated: February 9, 2023

---

[5] In the alternative, Claim One also lacks merit for the reasons discussed in conjunction with Claim Two (a). In Claim One, Hazel argues that "the Commonwealth failed to disclose the actual basis for the vehicle stop which led to petitioner's arrest was not a traffic infraction, but was rather, an undisclosed tip from the Commonwealth's paid confidential informant," and that the failure to disclose this information was a violation of *Brady v. Maryland*, 373 U.S. 83 (1963) (ECF No. 1-1, at 2.) To state a viable claim under *Brady*, Hazel is required to show that the Commonwealth suppressed "evidence favorable to [him] upon [his] request" that "[was] material either to [his] guilt or punishment." 373 U.S. at 87. Hazel fails to do so. Hazel's theory that Carter was serving as a confidential informant for police at the time of the stop is speculative and unsupported. Therefore, because Hazel fails to provide any evidence that Carter was a paid informant, he fails to establish that the Commonwealth suppressed material evidence in violation of *Brady*.